**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **In re:** | **Case No. 23-51715-JAW** |
| **EL DORADO GAS & OIL, INC., et al.[1]** | **Chapter 11** |
| **Debtors.** | **(Substantively Consolidated)** |
| **EL DORADO GAS & OIL, INC. a/k/a El Dorado Oil & Gas, Inc., and WORLD AG INVESTMENT, INC.** | |
| **Plaintiffs / Counter-Defendants,** | |
| **FIRST SERVICE BANK** | **Adv. Proc. No. 26-06007** |
| **Intervening Plaintiff / Counter-Defendant** | |
| **v.** | |
| **BILL D. BUFFINGTON, COTTONWOOD RECREATION LAND, INC. and GS HOLDINGS, INC.** | |
| **Defendants/ Counter-Plaintiffs.** | |

**FIRST SERVICE BANK'S MOTION FOR: (A) SUMMARY JUDGMENT; (B) FED. R. CIV. P. 54(B) CERTIFICATION; AND (C) ALTERNATIVELY, RELIEF PROVIDED FOR UNDER FED. R. CIV. P. 56(G)**

Intervening Plaintiff and now counter-defendant, First Service Bank ("FSB") hereby files

this *Motion for: (A) Summary Judgment; (B) Fed. R. Civ. P. 54(b) Certification; and (C)*

*Alternatively, Relief Provided for Under Fed. R. Civ. P. 56(g)* (the "Motion") requesting entry of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: El Dorado Gas & Oil, Inc. (4581); Hugoton Operating Company, Inc. (3245); Bluestone Natural Resources II - South Texas, LLC (4581); and World Aircraft, Inc. (4581).

summary judgment against defendants, Bill D. Buffington ("Buffington"), Cottonwood Recreation Land, Inc. ("Cottonwood Recreation"), and GS Holdings, Inc. ("GS Holdings" and collectively with Buffington and Cottonwood Recreation, the "Buffington Parties") on FSB's single Claim stated in its First Claim for Relief of its Complaint in Intervention [32] and the Buffington Parties' Counterclaims I-II.  In support of the Motion, FSB submits the *Memorandum of Law in Support of the Motion for: (A) Summary Judgment; (B) Fed. R. Civ. P. 54(b) Certification; and (C) Alternatively, Relief Provided for Under Fed. R. Civ. P. 56(g)* (the "Brief"), filed contemporaneously herewith, and states as follows:

## I.      INTRODUCTION

1.      By the Motion, FSB seeks summary judgment on its first and only claim, which is for declaratory relief regarding alleged property interests pursuant to 28 U.S.C. § 2201, *et seq.* (the "Claim"). FSB's Claim includes, but is not limited to, a request for a declaratory judgment that FSB holds a Deed of Trust covering the Hunting Land that is superior to any claim by the Buffington Parties that they have any interest in the Hunting Land. The Motion further seeks summary judgment with respect to the Buffington Parties' counterclaims for adverse possession and unjust enrichment (collectively, the "Counterclaims").[2] As set forth herein and in FSB's Memorandum, the record supports the Court granting summary judgment on both the Claim and Counterclaims for a multitude of reasons.

2.      Plaintiffs El Dorado Gas & Oil, Inc. ("EDGO") a/k/a El Dorado Oil & Gas, Inc. ("EDOG," and together with EDGO, "El Dorado") and World Ag Investment, Inc. ("World

---

[2]      The Counterclaims are currently subject to two motions to dismiss filed by the Plaintiffs [Docket No. 33] and intervening plaintiff, First Service Bank ("FSB") [Docket Nos. 47, 48].  The Buffington Parties have not filed a response to either motion to dismiss and a hearing has not been scheduled. However, in the event the motions are denied,  FSB believes summary judgment is warranted and requests such relief herein.

Ag") have filed a Motion for Partial Summary Judgment [69] (hereinafter referred to as "Plaintiffs' Motion") and a supporting Brief [70]. FSB is entitled to summary judgment for all the same reasons stated in Plaintiffs' Motion and Brief as it relates to Plaintiffs' First Claim for Relief and the Buffington Parties' Counterclaims. Accordingly, FSB adopts and incorporates herein by reference Plaintiffs' Motion [69] and Brief [70], including but not limited to Plaintiffs' statement of undisputed facts, the Exhibits filed with Plaintiffs' Motion, and all of the arguments made by the Plaintiffs related to their First Claim for Relief and the Buffington Parties' counterclaims.[3]

3.      In addition, the Court should grant FSB summary judgment because it is undisputed that in 2016 World Ag granted to FSB a Deed of Trust covering the Hunting Land which was promptly recorded in Issaquena County in 2016. The Deed of Trust and loan thereby placed FSB in the status of a bona fide lienholder/encumbrancer of the Hunting Land for value without notice of any ownership interest alleged by the Buffington Parties.

## II.     DOCUMENTS IN SUPPORT OF SUMMARY JUDGMENT

4.      In support of this Motion, FSB relies on the following exhibits:

- Exhibits 2, 5–14, and 17–21 to Plaintiffs' Motion [69], filed at Dkt. Nos. [69-2], [69-5] through [69-14], and [69-17] through [69-21];

- Exhibit 1 attached hereto – Credit Agreement and Note between FSB, as lender, and World Ag, as borrower, dated October 24, 2016 ("Loan No. 396745");

- Exhibit 2 attached hereto – Deed of Trust dated October 24, 2016 executed by World Ag, as grantor, for the benefit of FSB covering the Hunting Land;

- Exhibit 3 attached hereto – Current Credit Agreement and Note between FSB, as lender, and World Ag, as borrower, dated October 24, 2022, which is a renewal and extension of Exhibit 1;

---

[3]      All capitalized terms herein have the same meaning as used in Plaintiffs' Motion [69] and Brief [70].

- Exhibit 4 attached hereto – Current Deed of Trust dated October 24, 2022 executed by World Ag, as grantor, for the benefit of FSB covering the Hunting Land, which is a renewal and extension of Exhibit 2 (Exhibits 1 – 4 are collectively referred to as the "396745 Loan Documents"); and

- Exhibit 5 attached hereto – Notice of default under the Commercial Credit Agreement, Note and Deed of Trust dated February 13, 2024.

### III.  UNDISPUTED FACTS[4]

5.  FSB's list of undisputed facts is set forth as follows:

#### A.  The Hunting Land

1.  The Hunting Land is comprised of the land in Issaquena County, Mississippi described in [69-2]. *Also compare* [32], p. 5, ¶¶ 27-28 *with* [46], p. 3, ¶¶ 27-28.

#### B.  Deraignment of Title to the Hunting Land

2.  Deraignment of title to the Hunting Land prior to El Dorado's ownership is unnecessary because both FSB and the Buffington Parties assert claims against the Hunting Land only by, through and under El Dorado[5]. *Compare* [32], p. 5, footnote 2 and p. 6, ¶¶ 31-36 *with* [46], p. 4, ¶¶ 31-36 and p. 9, ¶ 6.

3.  A Warranty Deed, dated March 30, 1998, is recorded in Book A-X, Pages 442-449 of the Issaquena County Deed Records, conveying all the Hunting Land and other land to EDOG from Jack M. Painter, James M. Painter, Sally Painter Ficken, and Martha

---

[4]     The facts contained herein are undisputed based on the Buffington Parties' Answer to FSB's Complaint in Intervention and/or their deposition testimony. All of the factual statements made in paragraphs 1 – 8, 12 - 13 and 15 - 48, below, are substantively identical to the factual statements made in Plaintiffs' Motion insofar as they relate to the Hunting Land. The only difference is that the supporting evidentiary citations are to FSB's Complaint in Intervention instead of Plaintiffs' Complaint and to the Buffington Parties' Answer to FSB's Complaint in Intervention instead of their Answer to Plaintiffs' Complaint.

[5]     The Buffington Parties admit that El Dorado Gas & Oil, Inc. ("EDGO"), is the Debtor, and that EDGO and EDOG are the same entity. *Compare* [32], p. 4, ¶ 21 *with* [46], p. 3, ¶ 21.

---

Painter Burkhart (collectively, the "Painters"). *See* [69-9]; *compare* [32], p. 6, ¶ 31 *with* [46], p. 4, ¶ 31; *see also* [69-5], p. 85, line 20 through p. 86, line 13.

4.     A Correction Warranty Deed, dated July 22, 1998, between the Painters and EDOG is recorded in Book A-Y, Pages 164-166 of the Deed Records in the office of the Chancery Clerk of Issaquena County, Mississippi, which corrected the above-mentioned Warranty Deed in respects not material to this proceeding.  *See* [69-10]; *compare* [32], p. 6, ¶ 32 *with* [46], p. 4, ¶ 32.

5.     Prior to the conveyance from the Painters to EDOG on March 30, 1998, El Dorado did not own any portion of the Hunting Land. *See* [69-5] at p. 85, line 20 through p. 86, line 13; *see also* [69-7] at p. 24, lines 14-18.

6.     By deed dated October 15, 1998, recorded in Book A-Y, Pages 356-359, EDOG conveyed the Hunting Land and other land to Tom Swarek ("Swarek"). *See* [69-11]; c*ompare* [32], p. 6, ¶ 33 *with* [46], p. 4, ¶ 33; *see also* [69-5] at p. 86, line 19 through p. 87, line 25.

7.     By deed dated April 12, 2000, recorded in Book 2, Pages 569-572, Swarek conveyed the Hunting Land and other land back to EDOG. *See* [69-14]; *compare* [32], p. 6, ¶ 34 *with* [46], p. 4, ¶ 34.

8.     By deed dated December 14, 2004, recorded in Book 10, Pages 585-587, EDOG conveyed the Hunting Land to World Ag. *See* [69-17]; c*ompare* [32], p. 6, ¶ 35 *with* [46], p. 4, ¶ 35.

9.     On or about October 24, 2016, FSB entered into a commercial line of credit agreement and note with World Ag ("Loan No. 396745"). *See* Credit Agreement and Note, attached as Exhibit 1; *compare* [32], p. 4, ¶ 23 *with* [46], p. 3, ¶ 23.

10.     On or about October 24, 2016, World Ag gave FSB a deed of trust (the "FSB Deed of Trust") in the Hunting Land securing the Credit Agreement and Note, which has been renewed and/or modified multiple times. *See* Deed of Trust, attached as Exhibit 2; *compare* [32], p. 5, ¶ 24 *with* [46], p. 3, ¶ 24.

11.     The Credit Agreement, Note and Deed of Trust were subsequently amended and restated multiple times. The most current amended and restated Credit Agreement and Note and the most current modification to the Deed of Trust are attached as Exhibits 3 and 4, respectively (together Exhibits 1-4 are referred to as the "396745 Loan Documents"); *compare* [32], p. 5, ¶ 25 *with* [46], p. 3, ¶ 25.

12.     There are no other pertinent deeds of record in Issaquena County executed by World Ag or El Dorado conveying interests in the Hunting Land. Record title to the Hunting Land is held by World Ag subject to FSB's recorded Deed of Trust. *Compare* [32], p. 2, ¶ 3, p. 5, ¶ 29 and p. 6, ¶ 36 *with* [46], p. 2, ¶ 3, p. 3, ¶ 29, p. 4, ¶ 36, *and* p. 9, ¶ 6.

13.     The Buffington Parties do not hold record title in any of the Hunting Land. *Compare* [32], p. 5, footnote 2 and p. 6, ¶¶ 31-36 *with* [46], p. 4, ¶¶ 31-36 and p. 9, ¶ 6.

14.     On February 13, 2024, FSB provided World Ag and Swarek, as guarantor, notice of default, suspension and acceleration. *See* Exhibit 5; *compare* [32], p. 5, ¶ 26 *with* [46], p. 3, ¶ 26.

**C.      Buffington Parties' Alleged Ownership via 1998 Agreement and 1998 Deed Related to Hunting Land and Other Land**

15.     On March 12, 1998, EDOG and Cottonwood Recreation entered into an agreement (the "1998 Agreement") which the Buffington Parties assert is an agreement to

convey the Hunting Land and other land from EDOG to Cottonwood Recreation. *See* [69-6]; *compare* [32], p. 7, ¶ 43 *with* [46], p. 4, ¶ 43.

16.     The 1998 Agreement was never filed for record in Issaquena County. *Compare* [32], p. 7, ¶ 43 *with* [46], p. 4, ¶ 43.

17.     The 1998 Agreement predated El Dorado's ownership of the Hunting Land. *Compare* [69-6] and [69-9].

18.     The 1998 Agreement recites that EDOG was the holder of a contract with the Painter family (the "Painter Contract") and that a copy of the Painter Contract was attached as Exhibit "A"; however, no Exhibit "A" was attached to the 1998 Agreement. *See* [69-6], p. 1.

19.     The 1998 Agreement describes the property to be conveyed only as "633 acres more or less of hunting and/or timber land located generally west of the Mississippi River levee" to be more specifically described by a future survey, and "a wood frame house located on the farmland property having a lot size of 100 feet by 75 feet;" but does not identify any Section, Township, Range or County for the property descriptions. *See* [69-6], pp. 1, 4.

20.     On March 12, 1998, EDOG executed a deed (the "1998 Deed") which the Buffington Parties assert purports to convey the Hunting Land and other land to Cottonwood Recreation. *See* [69-8]; *Compare* [32], p. 7, ¶ 43 *with* [46], p. 4, ¶ 43.

21.     The 1998 Deed predated EDOG's ownership of the Hunting Land.  *Compare* [69-8] and [69-9].

22.     The 1998 Deed refers to, but does not attach, an Exhibit "A" to describe the property to be conveyed. *See* [69-8]; *see also* [69-7] at p. 62, line 18 through p. 63, line 9; *and* [69-5] at p. 83, line 13 through p. 84, line 24.

23.     EDOG never delivered the 1998 Deed to the Buffington Parties. *See* [69-7] at p. 101, lines 11-13; *see also* [69-5] at p. 82, line 16 through p. 83, line 12; p. 85, lines 2-16; p. 124, line 6 through p. 125, line 1; *and* p. 145, line 25 through p. 146, line 9.

24.     The 1998 Deed was never filed of record in Issaquena County. *Compare* [32], p. 7, ¶ 43 *with* [46], p. 4, ¶ 43; *see also* [69-7] at p. 62, line 18 through p. 63, line 9, *and* p. 64, lines 6-8.

25.     The Buffington Parties were aware that Swarek was required to retain title to the Hunting Land and other land to obtain financing and that Swarek was encumbering the Hunting Land and other land to secure financing. *See* [69-5] at p. 86, line 19 through p. 87, line 25.

26.     In August 1999, Swarek conveyed a construction easement over a portion of the Hunting Land to the Board of Mississippi Levee Commissioners. *See* [69-13].

27.     The Buffington Parties knew the easement was being granted and knew that the easement was not in their name.  *See* [69-5] at p. 91, line 17 through p. 94, line 22.

**D.      2015 Memorandum of Understanding**

28.     On December 20, 2015, the Buffington Parties executed a Memorandum of Understanding (the "2015 MOU") with World Ag, EDOG and Swarek.  *See* [69-18]; *and* c*ompare* [32], p. 7, ¶ 45 *with* [46], p. 4, ¶ 45.

29.     The Buffington Parties admit that they intended to be bound by the 2015 MOU. *See* [69-5] at p. 113, line 12 through p. 114, line 21.

30.     The 2015 MOU restates the consideration that the Buffington Parties were required to pay for the Hunting Land and other land and acknowledges that the Buffington Parties had not paid the full balance required to receive deeds relating to any of the land. *See* [69-18] and *compare* [32], p. 7-8, ¶¶ 46-48 *with* [46], p. 5, ¶¶ 46-48.

31.     The 2015 MOU acknowledges that EDOG, World Ag and Swarek had never delivered deeds conveying the Hunting Land to the Buffington Parties. *See* [69-18] at p. 3, second to last paragraph; *also compare* [32], p. 8, ¶ 49 *with* [46], p. 5, ¶ 49.

32.     The 2015 MOU set December 31, 2017 as the final deadline for the Buffington Parties to pay all remaining principal and interest to acquire the Properties. *See* [69-18]; *also compare* [32], p. 8, ¶ 50 *with* [46], p. 5, ¶ 50.  In addition, in the event the Buffington Parties failed to pay their obligations in full on or before December 31, 2017, then no deeds would be delivered to the Buffington Parties, and all payments theretofore made by the Buffington Parties would be deemed to be rental payments. *Id.*

33.     The Buffington Parties failed to make the majority of the payments due by December 31, 2017 under the 2015 MOU. *See* [69-5] at p. 129, lines 1-20.

34.     The Buffington Parties admitted in their 2025 depositions that no deeds to the Hunting Land had been delivered by the Plaintiffs to the Buffington Parties. *See* [69-5] at p. 124, line 6 through p. 125, line 1; *see also* [69-7] at p. 84, line 22 through p. 85, line 6 and p. 101, lines 11-13.

35.     Moreover, even today, the Buffington Parties' Counterclaim adopts FSB's deraignment of title as their own deraignment of title. *See* [46], p. 9, ¶ 6.  FSB's deraignment of title does not include any deed to any of the Buffington Parties. *See* [32], p. 5, footnote 2 and p. 6, ¶¶ 31-36. Consistently, the Buffington Parties admit their

deraignment of title does not include any deeds to any of the Buffington Parties. *Compare* [32], p. 5, footnote 2 and p. 6, ¶¶ 31-36 *with* [46], p. 9, ¶ 6.

### E.      2018 Mutual Release

36.      Effective January 1, 2018, the Buffington Parties and EDOG, World Ag, and Swarek entered into a Cancellation and Mutual Release Agreement (the "2018 Mutual Release"). *See* [69-19]; *see also* [69-7], at p. 105, line 10 through p. 106, line 10 *and* [69-5] at p. 126, lines 2-6 and p. 127, lines 3-8; and *compare* [32], p. 8, ¶ 51 *with* [46], p. 5, ¶ 51.

37.      Pursuant to the 2018 Mutual Release, the Buffington Parties:  (i) released all claims to the Hunting Land and other land; (ii) made null and void the 2015 MOU and all prior agreements and documents referenced therein; (iii) agreed that prior payments by the Buffington Parties would be treated as rent; and (iv) agreed that the Hunting Land and other land described in the 2015 MOU would remain in the ownership and name of EDOG, World Ag and/or Swarek "without any liens, encumbrances or claims of any kind asserted by" the Buffington Parties "now or in the future," and that prior payments would be treated as rental payments for past use of the property through December 31, 2017. *See* [69-19]; *compare* [32], pp. 8-9, ¶¶ 52-54 *with* [46], p. 5, ¶¶ 52-54; *see also* [69-7] at p. 105, line 25 through p. 106, line 10.

38.      Notwithstanding their express covenant quoted in the preceding paragraph, the Buffington Parties allege that as consideration for the 2018 Mutual Release agreement World Ag agreed to convey to the Buffington Parties a life estate in the Hunting Land. *Compare* [32], p. 9, ¶ 55 *with* [46], p. 5, ¶ 55.

39.     The Buffington Parties' allegation that World Ag agreed to convey a life estate in the Hunting Land is negated by the express language of the 2018 Mutual Release. *See* [69-19] (releasing "all claims of any kind" to the Hunting Land).

40.     The Buffington Parties allegation that World Ag agreed to convey a life estate in the Hunting Land is also negated because the 2018 Mutual Release does recite the consideration given by the parties, does not make any reference to a life estate and requires that any modification to the agreement must be in a "writing signed by all parties."  See [69-19].

41.     Moreover, the Buffington Parties' Answer to FSB's Complaint admits that no deed conveying a life estate in the Hunting Land has ever been delivered to the Buffington Parties. *Compare* [32], p. 9, ¶ 56 *with* [46], p. 5, ¶ 56; *see also* [69-7] at p. 127, lines 11-13 *and* [69-5] at p. 126, lines 2-9 and p. 133, lines 10-24.

42.     The Buffington Parties also admit that they do not even know if World Ag, EDOG or Swarek ever signed a life estate deed. *Id*.; *see also* [69-7] at p. 126, line 23 through p. 127, line 13.

43.     Finally, the Buffington Parties admit there is no public record of any life estate deed to any Buffington Party. *See* [69-7] at p. 127, lines 14-19; *also compare* [32], p. 5, footnote 2 and p. 6, ¶¶31-36 *with* [46], p. 9, ¶ 6.

44.     The Buffington Parties admit that "[a]ll we got i[s] 'blank' life estate forms."  *See* [69-5] at p. 126, lines 2-9.

45.     Tellingly, the Buffington Parties admit they never even asked for delivery of an executed life estate deed.  *See* [69-5] at p. 136, line 15 through p. 137, line 12 and p. 138, lines 2-10.

**F.     Leases Related to the Hunting Land and Other Land**

46.     Effective January 1, 2018, and contrary to any alleged life estate and/or fee simple interest having been granted, El Dorado and World Ag leased to the Buffington Parties all "FSA Farm Serial #168" in Issaquena County, Mississippi. *See* [69-20][6] & [69-21]; *compare* [32], p. 9, ¶¶ 57-58 *with* [46], p. 5, ¶ 57-58; *see also* [69-7] at p. 150, lines 11 through p. 151, line 7; *and* [69-5] at p. 44, line 11 through p. 45, line 8.

47.     Farm Serial #168 is comprised of several tracts of land including the Hunting Land. *See* [69-21]; *compare* [32], p. 9, ¶ 58 *with* [46], p. 5, ¶ 58; *see also* [69-5] at p. 46, lines 6-18 and p. 47, line 11 through p. 52, line 12.

48.     The Buffington Parties assert that after the expiration of the 2018 Lease, they continued to lease the land via oral one-year lease extensions. *Compare* [32], p. 11, ¶ 70 *with* [46], p. 6, ¶ 70.[7]

49.     The Buffington Parties' possession of the Hunting Land after January 1, 2018 was pursuant to the 2018 Lease and alleged oral one-year lease extensions. See [69-20]; compare [32], p. 11, ¶ 70 with [46], p. 6, ¶ 70.

## IV.     RELIEF REQUESTED

6.     Based on the undisputed facts set forth above, and as more fully set forth in the Memorandum, FSB is entitled to judgment as a matter of law against the Buffington Parties on its First Claim as well as on the Buffington Parties' Counterclaims I and II.

7.     Further, FSB requests, that pursuant to Fed. R. Civ. P. 54(b), made applicable by Fed. R. Bankr. P. 7054(b), the Court determine that there is no just reason for delay on the issues

---

[6]     This lease shall be referred to herein as the "2018 Lease".
[7]     For purposes of this Motion only, FSB assumes the truth of that assertion through December 31, 2025.

---

addressed in this Motion and that the Court enter the certification necessary for summary judgment to become final.

8.       Alternatively, if the Court does not grant all the relief requested by the Motion, FSB requests that the Court enter an order identifying each material fact—including any item of damages or other relief—that is not genuinely in dispute and treat such undisputed facts as established in this case, pursuant to Fed. R. Civ. P. 56(g), made applicable by Fed. R. Bankr. P. 7056(g).

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, FSB respectfully requests that the Court grant the Motion and enter judgment in its favor and against the Buffington Parties as follows:

a. declaring that World Ag owns the Hunting Land and that FSB holds a valid Deed of Trust covering the Hunting Land, both of which are free and clear of any claim asserted by the Buffington Parties or anyone claiming by, through or under them;

b. declaring that none of the Buffington Parties owns any fee interest, life estate, or leasehold right or other possessory interest in the Hunting Land;

c. cancelling, nullifying, and removing any and all claims asserted by the Buffington Parties as clouds upon the title of World Ag and FSB to the Hunting Land;

d. declaring that FSB's Deed of Trust, as amended and restated, covering the Hunting Land is superior to any putative claims made by the Buffington Parties regarding the Hunting Land;

e. declaring that any alleged unrecorded interest in the Hunting Land asserted by the Buffington Parties is invalid, ineffective, unenforceable, or subordinate to FSB's recorded Deed of Trust under applicable Mississippi law;

f. ordering the Buffington Parties to vacate and surrender possession of the Hunting Land to the Trustee within ten (10) days after entry of judgment;

g. dismissing the Buffington Parties' Counterclaims I and II with prejudice;

h. finding under Fed. R. Civ. P. 54(b) and Fed. R. Bankr. P. 7054 that there is no just reason for delay and directing entry of final judgment on FSB's Claim and the Buffington Parties' Counterclaims; and

i. granting such other and further relief as the Court deems just and proper.

Alternatively, the Court should enter an order identifying each material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case if the Court does not grant all the relief requested by the Motion as permitted by Fed. R. Civ. P. 56(g).

This 28th day of July, 2026.

Respectfully submitted,

*/s/ Jack Crawford*
John A. Crawford, Jr. (Miss. Bar No. 10346)
BUTLER SNOW LLP
P.O. Box 6010
Ridgeland, MS 39158-6010
T: (601) 948-5711
F: (601) 985-4500
E: jack.crawford@butlersnow.com

-and-

OKIN ADAMS BARTLETT CURRY, LLP

David L. Curry, Jr. (Texas Bar No. 24065107)
Edward A. Clarkson, III (Texas Bar No. 24059118)
Kelley Killorin Edwards (Texas Bar No. 24129017)
1113 Vine Street, Ste. 240
Houston, TX 77002

ATTORNEYS FOR FIRST SERVICE BANK

## CERTIFICATE OF SERVICE

I, John A. Crawford, Jr., do hereby certify that on this 28th day of July, 2026, I have electronically filed this document with the Clerk of this Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Jack Crawford*
John A. Crawford, Jr.

101861919.v1